UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re Application Pursuant to 28 U.S.C. § 1782   :
of REBECCA J. FERNIE,   :   Civil Action No.    17-MC-473
                                   Petitioner,   :
                                         :   MEMORANDUM OF LAW
       - to take discovery of -   :   IN SUPPORT OF PETITION
                                         :   FOR AN ORDER PURSUANT
MORGAN STANLEY, LLC, and   :   TO 28 U.S.C. § 1782
PRESS MANAGEMENT, LLC ,   :   COMPELLING DISCOVERY
                                         :   IN AID OF FOREIGN
                           Respondents.   :   JUDICIAL PROCEEDING
                                         :
                                         :

---------------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF
## PETITION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782
## COMPELLING DISCOVERY IN AID OF FOREIGN JUDICIAL PROCEEDING


MISHCON DE REYA NEW YORK LLP
156 5th Avenue – Suite 904.
New York, NY  10010
(212) 612-3270 (phone)
(212) 612-3297 (fax)

*Attorneys for Petitioner*
*Rebecca J. Fernie*

## TABLE OF CONTENTS

INTRODUCTION............................................................................................................1

FACTUAL BACKGROUND ..........................................................................................2

    A.    The Company is Formed in May 2015.................................................3

    B.    Wrongful Exclusion of Petitioner from Management. .......................5

    C.    Unlawful purported expropriation of Petitioner's shares..................7

    D.    Section 1782 Discovery Application and Requested Discovery. .......7

    E.    Morgan Stanley ....................................................................................8

    F.    Press Management ...............................................................................9

ARGUMENT ..................................................................................................................9

    A.    The Petition Satisfies The Statutory Requirements Of Section 1782..............12

    B.    All Of The Discretionary Factors Weigh In Favor Of Granting The Petition. ..........................................................................................13

        1.    Morgan Stanley and Press Management Would Not Be Participants In The Contemplated Bahamas Actions. .........................14

        2.    The Bahamas Court Is Receptive To Federal Court Judicial Assistance.........................................................................14

        3.    The Section 1782(a) Request Is Not An Attempt  To Circumvent Foreign Proof-Gathering Limits  Or Other Policies Of A Foreign Country Or The United States. .........................16

        4.    The Section 1782(a) Request Is Not Unduly Intrusive Or Burdensome.....................................................................17

    CONCLUSION ......................................................................................................19

Table of Authorities
**Cases**                                                                                                          **Page(s)**

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
    785 F. Supp. 2d 434 (S.D.N.Y. 2011) ..............................................................12, 16

*In re Application Pursuant to 28 U.S.C. Section 1782 for an Order Permitting Christen Sveaas to
    Take Discovery from Dominique Levy, L & M Galleries &,
    other non-participants for use in Actions Pending in the Norway*,
    249 F.R.D. 96 (S.D.N.Y. 2008) .............................................................................17

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
    673 F.3d 76 (2d Cir. 2012)..............................................................................10, 11

*In re Chevron Corp.*,
    749 F. Supp. 2d 141 (S.D.N.Y. 2010)......................................................................11

*In re Coalition to Protect Clifton Bays, et al.*,
    No. 14-mc-258 (DLC), 2014 WL 5454823 (S.D.N.Y Oct. 28, 2014) ......................12, 15, 16

*In re Eli Lilly & Co.*,
    No. 3:09MC296 (AWT), 2010 WL 2509133 (D. Conn. June 15, 2010)..............................18

*Fleischmann v. McDonald's Corp.*,
    466 F. Supp. 2d 1020 (N.D. Ill. 2006) .....................................................................17

*In re Gemeinshcaftspraxis Dr. Med. Schottdorf*,
    No. Civ.M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006)...........................13, 18

*In re Grupo Qumma, SA.*,
    No. M 8-85, 2005 WL 937486 (S.D.N.Y. Apr. 22, 2005) .....................................14

*Gushlak v. Gushlak*,
    486 F. App'x 215 (2d Cir. 2012) ....................................................................10, 12

*In re Hallmark Capital Corp.*,
    534 F. Supp. 2d 951 (D. Minn. 2007)......................................................................18

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004)................................................................................ *passim*

*Lancaster Factoring Co. v. Mangone*,
    90 F.3d 38 (2d Cir. 1996)...................................................................................16

*In re Letter Rogatory from the Nedenes Dist. Court, Nor.*,
    216 F.R.D. 277 (S.D.N.Y. 2003) ..........................................................................13

*Marubeni Am. Corp. v. LBA Y.K.*,
   335 F. App'x 95 (2d Cir. 2009) .......................................................................10

*In re Metallgesellschaft*,
   121 F.3d 77 (2d Cir. 1997)..........................................................................11, 13

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978)..........................................................................................17

*In re Request for Legal Assistance from the Netherlands in the Criminal Matter of Robert*
   *WILHELM and Others*,
   470 F.Supp.2d 409 (S.D.N.Y. Jan. 23, 2007) ...................................................11

*In re Servicio Pan Americano de Proteccion, C.A.*,
   354 F. Supp. 2d 269 (S.D.N.Y. 2004)...................................................14, 15, 16

*In re Strand Invs.*,
   No. 09-21985-CIV, 2009 WL 2225536 (S.D. Fla. July 24, 2009) ...................12, 17

*In re Sveaas*,
   249 F.R.D..........................................................................................................17

**Other Authorities**

Federal Rule of Civil Procedure 26(b)..........................................................................17

Petitioner Rebecca J. Fernie ("Petitioner") respectfully submits this Memorandum of Law, together with the Declaration of Garth Philippe, Esq., dated November 30, 2017 ("Philippe Decl."), Declaration of Lana Milojevic, Esq., dated November 30, 2017 ("Milojevic Decl."), and the exhibits annexed thereto, in support of their Petition for an Order Pursuant to 28 U.S.C. § 1782 ("Petition") compelling Morgan Stanley, LLC ("Morgan Stanley") and Press Management, LLC ("Press Management") to (i) produce documents in compliance with subpoena attached as Exhibit A to the Milojevic Decl. ("Subpoena"), and (ii) submit to a deposition in accordance with the Subpoena, both for purposes of aiding discovery in connection with certain foreign civil proceedings reasonably contemplated to be brought in the Supreme Court of The Commonwealth of The Bahamas.

## INTRODUCTION

Petitioner is in the process of commencing a civil action in the Supreme Court of The Commonwealth of The Bahamas, Nassau, The Bahamas ("Bahamas Action"), and expects to file her action before the end of 2017. The Bahamas Action would seek damages and equitable relief from putative defendants Barbara Ann Bernard ("BAB"), Joanne Marie Bernard ("JMB"), Francis Joseph Crothers ("FJC") (together, "Defendants"), each a director of Wincrest Capital, Ltd. ("Company"), for, among other claims, fraudulent misrepresentation, conversion of corporate shares, and unauthorized direction of corporate action resulting in direct financial harm to Petitioner.

Morgan Stanley and Press Management are both central participants in the activities that give rise to the Bahamas Action, and each is based in New York City. As described more fully herein, BAB was in close communications with Morgan Stanley, the prime broker to the Company, concerning various aspects of Company operations, as well as with Press

Management, concerning Company financial operations and compensation considerations for the principals in the Company (including Petitioner).

The instant Petition is brought pursuant to 28 U.S.C. § 1782 to obtain discovery from Morgan Stanley and Press Management that is important and necessary to the adjudication of Petitioner's claims in the Bahamas Action.  The Petition is proper in that it fulfills the three (3) statutory requirements of Section 1782, namely (i) Morgan Stanley and Press Management are based and may be found in this District, (ii) the discovery sought is for use in a foreign legal proceeding, and (iii) Petitioner is an interested party within the meaning of the statute. Additionally, each of the following so-called *Intel* factors favors granting the Petition and entering an Order compelling Morgan Stanley and Press Management to provide the discovery requested by the respective Subpoenas: (i) neither Morgan Stanley nor Press Management is a participant in the Bahamas Action; (ii) the Bahamas is receptive to federal-court judicial assistance pursuant to Section 1782; (iii) the Petition is not an attempt to circumvent foreign proof-gathering limits or other policies of the Bahamas or United States; and (iv) the discovery sought is not unduly intrusive or burdensome.

Since the Petition easily meets the statutory requirements of Section 1782, and the *Intel* factors all weigh in favor of the Petition and requested Order, Petitioners respectfully request the Court grant the Petition in its entirety and enter an Order compelling Morgan Stanley and Press Management to provide the discovery requested by the Subpoena.

## **FACTUAL BACKGROUND**

Petitioner will be the plaintiff in the Bahamas Action.  Petitioner is the holder of fifty percent (50%) of the issued shares in the Company and its associated companies and funds.  *See* Philippe Decl. at ¶ 3.

Respondent Morgan Stanley is a Delaware Corporation, having its headquarters at 1585 Broadway, New York, New York, 10036. *See* Milojevic Decl. at ¶ 5, Ex. C. Morgan Stanley will not be a party or participant in the Bahamas Action, and, upon information and belief, is not subject to the jurisdiction of the Supreme Court of the Bahamas. *See* Milojevic Decl. at ¶ 7.

Respondent Press Management is a Delaware Corporation, having its principal place of business at 1 Rockefeller Plaza, 30th Floor, New York, New York, 10020. *See id.* at ¶ 6, Ex. D. Press Management will not be a party or participant in the Bahamas Action, and, upon information and belief, is not subject to the jurisdiction of the Supreme Court of the Bahamas. *See id.* at ¶ 8.

## A.     The Company is Formed in May 2015.

The Company was established by Petitioner and BAB in May 2015. *See* Philippe Decl. at ¶ 7.

Petitioner and BAB had been friends and worked together for some time at Holowesko Partners, a wealth management firm with more than $3.5 Billion under management. Together, Petitioner and BAB sought to establish a new business managing the wealth of high net worth families, beginning with BAB's family. Petitioner consequently left her well remunerated and high profile role at Holowesko, where her skill set was recognized and valued and she enjoyed a secure position. Indeed, that is one of the principal reasons BAB solicited Petitioner to leave Holowesko and partner with BAB in the new venture: together they had the skill sets necessary to establish an asset management business. *See id.* at ¶ 8.

Petitioner left Holowesko expressly to cofound a business which she would co-manage and co-own, becoming an equity partner and shareholder in the Company. This is evident in Company's Business Plan and also from the various representations that both BAB and Petitioner made to potential business partners, to regulators, to investors, and to service providers

such as Press Management (consulting relationship) and Morgan Stanley (Prime Broker relationship).  *Id.* at ¶ 9.

One of the claims Petitioner will assert arises from BAB's misrepresentation to Petitioner (made in an email sent just one day before Petitioner and BAB had provisionally agreed to resign from Holowesko), that the Company would be receiving $60 million in investment funds from BAB's family, stating: "p.s. as of this morning the day 1 figure from them is $60 million."  The following day Petitioner resigned from Holowesko, and using her savings fully committed herself to the Company.  *Id.* at ¶ 10.

Petitioner and BAB instructed the Bahamian attorneys Lennox Paton to incorporate the Company.  Petitioner and BAB were issued an equal number of shares and were appointed as the two sole directors of the Company.  Petitioner was also appointed Chief Operating Officer of the Company.  Petitioner and BAB funded the Company.  *Id.* at ¶ 11.

Petitioner devoted all of her time and attention to the Company.  In return, Petitioner and BAB were to receive equal remuneration from the Company, agreeing to the sum of $250,000 per annum.  *See id.* at ¶ 12.  In the circumstances, the Company was and is a quasi-partnership. *Id.* at ¶ 13.

BAB did not deliver the promised $60 million from BAB's family and instead the Company commenced business with only $13 million under management.  *Id.* at ¶ 14.  Petitioner detrimentally relied upon BAB's misrepresentation that BAB's family would be investing $60 million with the Company.  Petitioner would not have given up her position at Holowesko had she known the substantial investment promised by BAB would not be made.  *Id.* at ¶ 15.

Even without that initial investment, it was always intended that the Company would attract additional assets under management from other investors.   In that regard, the Company

began accepting other "new" clients and investors in February 2017.  By April 28, 2017, the Company had $30 million under management.  *Id.* at ¶ 16.

In the interim, in September 2016, with Petitioner's consent, JMB and FJC were appointed to the board of the Company, subject to approval by the Securities Commission of The Bahamas.  BAB convinced Petitioner to agree to the appointment on the representation that BAB's family would then provide the funds promised for the Company to manage.  *Id.* at ¶ 17.

Moreover, Petitioner agreed to the appointment of JMB and FJC in good faith, and with the expectation that their interests would be aligned with those of the Company and its two shareholders – including Petitioner.  JMB and FJC were both aware that Petitioner and BAB jointly managed the Company.  *Id.* at ¶ 18.

### B.    **Wrongful Exclusion of Petitioner from Management.**

Soon after JMB and FJC were appointed to the Company's Board, BAB sought to change the agreement between her and Petitioner concerning their ownership in the Company. Petitioner refused to give up her 50% share as she reasonably expected to maintain parity with BAB, including if Petitioner and BAB would agree to admit any newcomers as shareholders in the Company.  Having already mislead Petitioner regarding the initial $60 million investment (on "day 1"), BAB's actions did not inspire any confidence in Petitioner, and would soon further evidence BAB's bad faith and developing deceit.  *See* Philippe Decl. at ¶ 19.

Nevertheless, on March 28, 2017, BAB sent a revised draft written shareholder agreement to Petitioner.  The proposed agreement would have created different classes of shares and given all the Class A shares to BAB (and with them the right to exercise effective control of the Company) and all of the Class B shares to Petitioner (which would eliminate all control from Petitioner).  *Id.* at ¶ 20.  The proposed draft was wholly inconsistent with the existing agreement and understanding between Petitioner and BAB, upon which the Company was founded.

Accordingly, the draft was completely unacceptable to Petitioner.  *Id.* at ¶ 21.  In turn, Petitioner proposed revisions to the draft to reflect the initial agreement between her and BAB, and sent them to BAB.  BAB, however, did not discuss the matter further with Petitioner.  See Id. at ¶ 22

On April 28, 2017, BAB invited Petitioner to a meeting (without any notice whatsoever) where Michael Paton, of the firm Lennox Paton, was present.  *Id.* at ¶ 23.

During that meeting, Mr. Paton invited Petitioner to:

i.      resign as a Director of the Company and also to resign her employment as COO of the Company; and,

ii.     volunteer to sell her shares in the Company.  *Id.* at ¶ 24.

Mr. Paton informed Petitioner that should she fail to comply immediately, Resolutions had already been adopted whereby Petitioner would be removed as a Director, her employment as COO would be terminated and her shares would be compulsorily acquired, all effective immediately.  *Id.* at ¶ 25.  When Petitioner refused to comply, Mr. Paton produced Resolutions whereby Defendants, purported, as members of the Board of Directors of the Company, to approve and adopt a resolution to remove Petitioner from the Board pursuant to Article 80 of the Articles of Association of the Company ("Articles").  *Id.* at ¶ 26.

Given Petitioner's position as director in the Company, Defendants are not the only duly elected members of the Company's Board of Directors.  Articles 96 through 107 govern proceedings of directors and Article 96 requires 3 days' notice of a meeting of the directors to every director.  Petitioner was not given notice of a meeting or a resolution in lieu of a meeting and the resolution is, accordingly, invalid as a matter of Bahamian law.  *Id.* at ¶ 27.  Moreover, Defendants did not act in good faith or in the best interests of the Company as a whole, or even for a proper purpose.  Instead, they acted wrongfully and in their own interests, with the intent to

unlawfully exclude Petitioner from the Company and expropriate her shares in the Company.  *Id.* at ¶ 28.  Further, and given that the Company is properly to be regarded as a quasi-partnership, the exercise of any rights by BAB and the other directors is subject to equitable constraints, and they were not entitled to use Article 80 to remove Petitioner from the Board.  *Id.* at ¶ 29.

In that same April 28, 2017 meeting, Petitioner was handed a number of purported resolutions by Michael Paton, including:

> a.  Resolutions purporting to remove her as a director of three of the Company's investment funds:
>
>> i.    Wincrest Contraria Master Fund Ltd;
>>
>> ii.   Wincrest Contraria Fund Ltd;
>>
>> iii.  Wincrest Capital SPC; and
>
> b.  a letter purporting to terminate Petitioner's employment and deprive her of her entitlement to co-manage the Company.  *Id.* at ¶ 30.

The resolutions and termination letter are invalid as a matter of Bahamian law.  *Id.* at ¶ 31.

**C.    Unlawful purported expropriation of Petitioner's shares**

Also on April 28, 2017, Defendants purported to resolve to compulsorily redeem Petitioner's shares at par value.  Petitioner was not given valid notice of the resolution.  In any event, as a matter of Bahamian law, the Company cannot redeem Petitioner's shares without her agreement, and, consequently, the resolution is invalid.  *See* Philippe Decl. at ¶ 32.

**D.    Section 1782 Discovery Application and Requested Discovery.**

The discovery sought through Section 1782 petition application will assist Petitioner in her efforts to:

> a.  prosecute an action against Defendants for misrepresentation, unlawful means conspiracy, and conspiracy to injure Petitioner;
>
> b.  wind up the Company under just and equitable principles;

    c.   seek a declaration that the purported redemption of Petitioner's shares and termination of her employment with the Company and her exclusion from co-managing the Company is invalid; and

    d.   recover damages, costs and other relief as may be appropriate under Bahamian law.  *See* Philippe Decl. at ¶ 33.

Petitioner may add the Company as a defendant in her action.  *Id.* at ¶ 34.

Petitioner is seeking documents from Morgan Stanley, LLC ("Morgan Stanley") and

Press Management, LLC ("Press Management") concerning the following:

    a.   up to date brokerage accounts for the Company and its associated funds;

    b.   up to date consultancy agreements with the Company and its associated funds;

    c.   copies of any new or amended Company documents including articles, shareholder register, directors register, shareholders and any other Company agreements, in their possession;

    d.   copies of all letters and correspondence relating to the Company, including records of telephone calls with BAB discussing shareholder matters and Company business matters;

    e.   copies of all letters and correspondence relating to the removal of Petitioner as a director, employee, co-manager, and shareholder of the Company;

    f.   copies of all monthly Morgan Stanley, LLC statements since April 2017 for all Wincrest funds;

    g.   all documents concerning a December 15, 2016 spreadsheet prepared by Morgan Stanley and BAB;

    h.   copies of any new or updated SEC Schedule 13D filings since April 2017; and

    i.   all documents concerning Joel Press's and Press Management's view that Petitioner is not (and never was) a 50% shareholder in the Company and not entitled to a 50% share of profits in the Company.  *Id.* at ¶ 35.

## E.    **Morgan Stanley**

Petitioner is seeking the above documents and records from Morgan Stanley because it is

the prime broker of the Company and the ownership, directorship, and management of the

Company, as well as the representations made by or on behalf of the Company, are at the core of the instant dispute.  *See* Philippe Decl. at ¶ 36.

Discovery from Morgan Stanley is also being sought because in November 2016, BAB gave Petitioner a Morgan Stanley document covering hedge fund structures and compensation and stating that the Morgan Stanley document justified BAB's position that Petitioner should take a smaller share of the Company profits.  Upon information and belief, BAB had a lengthy meeting with Morgan Stanley to discuss a profit sharing structure because Morgan Stanley was also BAB's personal advisor.  Subsequently, on December 15, 2016, BAB produced to Petitioner a spreadsheet providing proposed Company compensations, costs and profits, and reflecting only a 6% share to Petitioner.  Upon information and belief, BAB worked with Morgan Stanley to prepare this spreadsheet.  *Id.* at ¶ 37.

### F.   **Press Management**

Petitioner is seeking documents and records from Press Management because it is in a consultancy relationship with the Company and the ownership, directorship, and management of the Company, as well as the representations made by or on behalf of the Company, are at the core of the instant dispute.  *See* Philippe Decl. at ¶ 38.

Documents are also sought from Press Management because on December 20, 2016, BAB, without Petitioner's approval, engaged Press Management, a consultant company with Joel Press as principal, to discuss the Company's structure and the launch of new investment funds. The contract is between Joel Press and the Company and signed by BAB only.  *Id.* at ¶ 39.

## ARGUMENT

Pursuant to 28 U.S.C. § 1782(a), "[t]he district Court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . The order may be

pursuant to . . . the application of any interested person and may direct that . . . the document or other thing be produced, before a person appointed by the court."  28 U.S.C. § 1782(a); *see also Gushlak v. Gushlak*, 486 F. App'x 215, 218 (2d Cir. 2012) ("district court may order a person to produce discovery in a foreign legal proceeding if (1) the person resides in the district of the district court to which the application is made; (2) the discovery is for use in the foreign legal proceeding; and (3) the application is made by a foreign or international tribunal or any interested person.") (quotations omitted).

In evaluating a Section 1782 petition, the Court should consider several factors, including "the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts."  *Marubeni Am. Corp. v. LBA Y.K.*, 335 F. App'x 95, 96 (2d Cir. 2009) (affirming grant of application for discovery); *see also Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) ("goals of the statute are to provide equitable and efficacious discovery procedures in the United States courts for the benefit of tribunals and litigants involved in litigation with international aspects . . . and to encourage foreign countries by example to provide similar means of assistance to our courts") (internal quotations and citations omitted).  The Supreme Court has enunciated four (4) factors district courts may consider in ruling on a Section 1782 petition: (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad;" (ii) "the nature of the foreign tribunal, the character of proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (iii) "whether the § 1782(a) request

conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (iv) whether a request is "unduly intrusive or burdensome." *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004); *see also In re Chevron Corp.*, 749 F. Supp. 2d 141, 160 (S.D.N.Y. 2010) (applying *Intel* factors, concluding discovery in aid of Ecuadorian proceeding should be allowed).

A district court may not, however, consider whether the information sought (i) has already been sought from the foreign tribunal, (ii) would be discoverable in the foreign jurisdiction, or (iii) is likely to be admissible in the foreign proceeding. *See Brandi-Dohrn*, 673 F.3d at 82 (reversing district court where district court quashed subpoenas issued under § 1782 because evidence would not be admissible in foreign court); *In re Metallgesellschaft*, 121 F.3d 77, 79 (2d Cir. 1997) (reversing district court's denial of § 1782 application where district court considered discoverability of information in foreign proceeding).

The foreign proceeding for which relief under Section 1782 is sought need not be pending or imminent but must be within reasonable contemplation. *See Intel Corp.*, 542 U.S. at 259 ("In short we reject the view, expressed in *In re Ishihara Chemical Co.,* that § 1782 comes into play only when adjudicative proceedings are 'pending' or 'imminent-very likely to occur and very soon to occur.' Instead, we hold that § 1782(a) requires only that a dispositive ruling by the Commission, reviewable by the European courts, be within reasonable contemplation."); *In re Request for Legal Assistance from the Netherlands in the Criminal Matter of Robert WILHELM and Others*, 470 F.Supp.2d 409 (S.D.N.Y. Jan. 23, 2007) (quoting *Intel* in granting Section 1782 application where the underlying "adjudicative proceeding" was within "reasonable contemplation").

As set forth herein, Petitioner's application satisfies all three (3) requirements necessary to obtain relief under Section 1782, and all of the relevant discretionary factors weigh in favor of granting the Petition in its entirety and ordering Morgan Stanley and Press Management to provide the discovery sought by the respective proposed Subpoenas.

A.    **The Petition Satisfies The Statutory Requirements Of Section 1782.**

Here, each of the three (3) statutory requirements for a Section 1782 application is met. First, both Morgan Stanley and Press Management reside in and may be found within the judicial district of this Court. Specifically, Morgan Stanley maintains a business address at 1585 Broadway, New York, New York 10036, and Press Management maintains its principal place of business at 1 Rockefeller Plaza, 30th Floor, New York, New York 10020. *See* Milojevic Decl. at ¶¶ 5-6, Exs. C, D; *Gushlak*, 486 F. App'x at 218 (statutory requirement met where respondent resided in district).

Second, Petitioner seeks the requested discovery to assist her in prosecuting her claims in the contemplated Bahamas Action to be brought in the Supreme Court of The Commonwealth of The Bahamas -- a foreign legal proceeding within the meaning of Section 1782. *See* Philippe Decl. at ¶ 4. District courts have previously granted Section 1782 applications in aid of proceedings pending in the Bahamas. *See, e.g., In re Coalition to Protect Clifton Bays, et al.*, No. 14-mc-258 (DLC), 2014 WL 5454823, at *5 (S.D.N.Y Oct. 28, 2014) (granting Section 1782 application in connection with a Bahamian proceeding); *In re Strand Invs.*, No. 09-21985-CIV, 2009 WL 2225536, at *1 (S.D. Fla. July 24, 2009) (same).

Third, as plaintiff in the foreign legal proceeding, Petitioner constitutes an "interested person" for purposes of the statute. *See Intel Corp.*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person' who may invoke § 1782"); *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,

785 F. Supp. 2d 434, 438 (S.D.N.Y. 2011) (party to foreign proceeding constitutes "interested person" for purposes of § 1782).

Accordingly, the Petition satisfies each of the three (3) Section 1782 statutory requirements.

### B.    All Of The Discretionary Factors Weigh In Favor Of Granting The Petition.

Once the three (3) statutory requirements of Section 1782 are satisfied, the Court may exercise its "broad discretion" in fashioning an appropriate discovery order.  *See In re Letter Rogatory from the Nedenes Dist. Court, Nor.*, 216 F.R.D. 277, 279 (S.D.N.Y. 2003) (granting discovery in aid of Dutch proceeding, requiring respondent to submit blood sample).   The Court's discretion should be liberally exercised "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts."  *In re Metallgesellschaft*, 121 F.3d at 79; *see also In re Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ.M19-88 (BSJ), 2006 WL 3844464, *4 (S.D.N.Y. Dec. 29, 2006) ("these considerations [aims of the statute] counsel heavily in favor of generous federal-court assistance").

The Supreme Court has enunciated four (4) factors to be considered by a district court in exercising its discretion.  *See Intel*, 542 U.S. at 264-65 (four factors are (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad;" (ii) "the nature of the foreign tribunal, the character of proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (iii) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of

a foreign country or the United States;" and (iv) whether a request is "unduly intrusive or burdensome.").  The Petition should be granted because each of the *Intel* factors weighs in favor of granting assistance to Petitioners in these premises.  *See, e.g, In re Servicio Pan Americano de Proteccion, C.A.*, 354 F. Supp. 2d 269, 275 (S.D.N.Y. 2004) (granting application for discovery upon consideration of *Intel* considerations and a determination that, as a whole, the information requested was directly relevant to the party's defense in the foreign suit); *In re Grupo Qumma, SA.*, No. M 8-85, 2005 WL 937486, at *4 (S.D.N.Y. Apr. 22, 2005) (granting request for discovery upon finding *Intel* factors persuasively support Section 1782 application).

1. **Morgan Stanley and Press Management Would Not Be Participants In The Contemplated Bahamas Actions.**

The first *Intel* factor is plainly met because neither Morgan Stanley nor Press Management will be a participant in the contemplated Bahamas Action.  *See* Philippe Decl. at ¶ 4.  Since neither Morgan Stanley nor Press Management is a participant in the Bahamas Action or otherwise subject to the jurisdiction of the Supreme Court of the Bahamas, absent the Court's granting of the Petition and discovery requested therein, Petitioner will be unable to obtain the necessary and material information in Morgan Stanley's and Press Management's possession for her claims against BAB, JMB, and FJC.  *See id.*  Indeed, the Supreme Court has recognized this situation as precisely when Section 1782 is most needed.  *See Intel*, 542 U.S. at 264 ("nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid").

2. **The Bahamas Court Is Receptive To Federal Court Judicial Assistance.**

The second *Intel* factor -- "the nature of the foreign tribunal, the character of proceedings underway abroad, and the receptivity of the foreign government, court, or agency to federal-court

judicial assistance" -- also favors the granting of Petitioners' request.  Where discovery pursuant to Section 1782 will produce information that is relevant to the underlying foreign dispute, it is more likely that the foreign court would be "receptive" to such evidence.  *See In re Servicio Pan Americano de Proteccion*, 354 F. Supp. 2d at 274 (granting 1782 Petition finding that "the discovery Pan Americano is seeking would be readily available and relevant to the litigation [in Venezuela]").  Moreover, as one court in this District has already held regarding a Section 1782 application for use in a Bahamian proceeding, "Nothing about 'the nature of the foreign tribunal, the character of the proceedings underway abroad, [or] the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance' counsels against a grant of the petition in this case."  *In re Coalition to Protect Clifton Bays, et al.*, 2014 WL 5454823, at *4.

Here, the requested discovery from Morgan Stanley and Press Management is highly relevant to the central allegations of the Bahamas Action.  As alleged in the Bahamas Action, BAB and the Company had, and still have, a close personal and business relationship with Morgan Stanley and Press Management.  *See* Philippe Decl. at ¶ 33.  As part of this relationship, BAB conferred with Morgan Stanley and Press Management to further BAB's goal of harming Petitioner.  Specifically, the allegations in the Bahamas Action will include that:

- BAB has been in regular contact with Morgan Stanley, which is the prime broker of the Company.  *See id.* at ¶ 36;

- BAB held a meeting with Morgan Stanley to discuss the Company profit sharing structure as Morgan Stanley was advising BAB on the matter. *See id.* at ¶ 37;

- BAB engaged Press Management to consult the Company on matters underlying Petitioner's contemplated claims. See id. at ¶ 39; and

- Petitioner has been unable to obtain information from Press Management regarding BAB's re-structuring of share profits from the Company.  See id. at ¶ 40;

In light of these allegations, and other material allegations to be asserted in the Bahamas Action, *see supra* at pp. 3-7, it is nearly certain that the discovery Petitioner seeks here will produce highly relevant information that will greatly benefit the adjudication of her claims in the Bahamas Action.  *See Lancaster Factoring Co. v. Mangone*, 90 F.3d 38, 40-41 (2d Cir. 1996) (affirming grant of § 1782 application seeking discovery from U.S.-based attorney of Italian company who, evidence showed, apparently had involvement in conspiracy to hide corporate funds which had been improperly transferred to a U.S. bank account, causing Italian company to enter bankruptcy); *Ahmad Hamad Algosaibi & Bros. Co.*, 785 F. Supp. 2d at 438 (S.D.N.Y. 2011) (finding discovery from banks that were used by foreign defendants to commit fraud and perpetrate conspiracy to be relevant and necessary to foreign proceeding).  Given these premises, it is reasonable to conclude that the Bahamas Supreme Court will be receptive to this Court granting the Petition and Petitioner's request for discovery therein from Morgan Stanley and Press Management.  *In re Coalition to Protect Clifton Bays, et al.*, 2014 WL 5454823, at *4; *In re Servicio Pan Americano de Proteccion*, 354 F. Supp. 2d at 274.  Thus, the second *Intel* factor weighs in favor of granting the Petition and Petitioner's request for discovery.

> **3.      The Section 1782(a) Request Is Not An Attempt
>          To Circumvent Foreign Proof-Gathering Limits
>          <u>Or Other Policies Of A Foreign Country Or The United States.</u>**

The third Intel factor -- whether "the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States" -- should also be decided in favor of Petitioners.

United States courts have determined that Section 1782 relief is not contrary to the proof gathering limits or policies of the Bahamas and have granted that relief to aid proceedings in Bahamian courts.  *See, e.g., In re Coalition to Protect Clifton Bays, et al.*, 2014 WL 5454823, at *4 (finding no Bahamian proof-gathering restrictions or other policies that would be

circumvented by granting the Section 1782 petition); *In re Strand Invs.*, 2009 WL 2225536, at *1 (granting 1782 discovery in Bahamian action).

As has been decided on occasions prior to this application, there is no reason to conclude that this Section 1782 Petition is antithetical to any Bahamian proof-gathering limits or policies. Petitioner makes this request for discovery in aid of the contemplated Bahamas Action in good faith and in satisfaction of the third Intel factor. *See Fleischmann v. McDonald's Corp.*, 466 F. Supp. 2d 1020, 1032 (N.D. Ill. 2006).

### 4.   The Section 1782(a) Request Is Not Unduly Intrusive Or Burdensome.

Finally, the fourth *Intel* factor -- whether the proposed discovery is "unduly intrusive or burdensome" -- also favors Petitioner.

"The proper scope of the discovery sought under section 1782, like all federal discovery, is governed by Federal Rule 26(b)." *In re Application Pursuant to 28 U.S.C. Section 1782 for an Order Permitting Christen Sveaas to Take Discovery from Dominique Levy, L & M Galleries & other non-participants for use in Actions Pending in the Norway*, 249 F.R.D. 96, 106-07 (S.D.N.Y. 2008) (granting Section 1782 application despite dispute over what would be relevant in foreign proceeding). Federal Rule of Civil Procedure 26(b), in turn, provides that "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b). It is axiomatic that Rule 26(b) provides for broad discovery and that the notion of relevance should be interpreted liberally. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (relevance includes "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"); *In re Sveaas*, 249 F.R.D. at 107 ("Given the broadly permissive standard by which a court evaluates the relevance of discoverable material . . . it is inappropriate to deny [petitioner's]

discovery requests on the ground that the requested discovery is irrelevant to [petitioner's] foreign claims.").

Here, evidence concerning Morgan Stanley's and Press Management's involvement in the operations of the Company, including BAB's decisions concerning Petitioner's Ownership in the Company, management responsibilities and rights to Company profits, is plainly relevant to the claims Petitioner will asserting in the Bahamas Action. *See supra* at pp. 1-2. Furthermore, the proposed Subpoena propounds document requests that are all narrowly tailored to comport with the contemplated allegations in the Bahamas Action in attempt to avoid unnecessary burden and expense on Morgan Stanley and Press Management. *See* Milojevic Decl. at ¶¶ 3-4, Exs. A, B. As such, the proposed Subpoena and discovery requested thereby is neither unduly intrusive nor burdensome. *See In re Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *8 (finding document requests "sufficiently tailored to the litigation issues for which production is sought" were not unduly intrusive or burdensome).

Importantly, regardless of where responsive documents or other relevant materials and information may be found (even outside this District), the Court may still direct Morgan Stanley and Press Management to produce such materials because these corporations reside and may be found in this District. *See id.* at *5 ("Section 1782 requires only that the party from whom discovery is sought be "found" here; not that the documents be found here."); *In re Eli Lilly & Co.*, No. 3:09MC296 (AWT), 2010 WL 2509133, at *4 (D. Conn. June 15, 2010) (concluding that Section 1782(a) does not require that the documents sought to be discovered be found in the district.); *In re Hallmark Capital Corp.*, 534 F. Supp. 2d 951, 957 n.3 (D. Minn. 2007) ("to the extent [United States based party from whom 1782 discovery was ordered] suggests that the only copies are located in Israel, any such fact would not relieve him of his obligation to produce

them if they are nonetheless in his control.").  Thus, all responsive documents in both Morgan

Stanley's and Press Management's possession, custody or control sought by the Subpoena,

whether electronic or otherwise, even if found in files or on computer hard drives or servers

housed outside of this District, are properly compelled by the Court upon granting this Petition.

Therefore, this factor also weighs in favor of granting the Petition and Petitioners'

requested discovery.

* * * * *

Because each of the Intel factors weighs in favor of the Petition, the Court should

exercise its discretion, grant the Petition in its entirety, and enter an Order compelling Morgan

Stanley and Press Management to provide the discovery sought by Petitioner pursuant to the

Subpoena.

## CONCLUSION

For all of the reasons set forth above and in the remainder of the record, Petitioner

respectfully requests that the Court issue an Order (i) granting the Petition in its entirety, (ii)

compelling Morgan Stanley and Press Management to (a) produce documents in accordance with

the proposed Subpoenas and Schedule A to each, and (b) submit to a deposition in accordance

with the Subpoenas, and (iii) for such other and further relief that the Court deems just and

proper.

Dated:  New York, New York                    Respectfully submitted,
        November 30, 2017

                                          MISHCON DE REYA NEW YORK LLP

                                        By: */s/ Vincent Filardo, Jr.*
                                           Vincent Filardo, Jr.
                                           Lana Milojevic

156 5th Avenue – Suite 904
New York, New York 10010
Tel: (212) 612-3270
Fax: (212) 612-3297
vincent.filardo@mishcon.com
lana.milojevic@mishcon.com

*Attorneys for Petitioner*
*Rebecca J. Fernie*